Good morning and may it please the court. Jennifer Wiedekind for Plaintiff Appellant Webster Williams, III. The question before us today is one of statutory interpretation. Does the PLRA require plaintiffs with disabilities to exhaust both the internal prison grievance procedure and a second external remedial process applicable only to plaintiffs with disabilities? Does the PLRA only requires exhaustion of internal prison grievance procedures? And that answer is particularly apparent here under Jones, where the BOP grievance policy says nothing about this second external EEO process. And it is even more apparent because the BOP's grievance procedure itself describes the last step in that procedure as the quote final administrative appeal. And it is also apparent when construing the PLRA consistently with federal disability rights laws, as this court must, requiring plaintiffs with disabilities to engage in a different and unequal process prior to enforcing their rights in federal court. What do you mean by unequal? It's just another avenue toward getting redress and a remedy would seem to be beneficial, not necessarily detrimental. Well, Your Honor, it requires plaintiffs with disabilities to engage in an additional process. Well, it requires every person disabilities or otherwise, right? Well, no, Your Honor, this EEO procedure is argued to apply only to prisoners who are bringing claims under the Rehabilitation Act. Are you aware of any external remedies available to just prisoners without disabilities? This is a matter of course. No, Your Honor, I am not aware of any prison officials and my colleague on the other side have not pointed to any other external procedures that are required for any other types of claims. So just so I understand your argument, it doesn't matter. You mentioned at the very beginning of your argument that the program statement itself made it clear that finality had been reached once your client complied with the traditional internal remedies procedure. But even if the program statement had been more explicit about this external remedy, your view is that your client can't be forced to abide by that or complete it. If the BOP agreements procedure had included a specific reference to the EEO policy, I do think that may resolve the threshold question under Jones on whether it could be required under the PLRA. But it would not resolve the conflict with the Rehabilitation Act itself because it would still be requiring plaintiffs with disabilities and only plaintiffs with disabilities to engage in this onerous second process that takes more than an additional year to complete beyond the BOP's and evidentiary hearing before an administrative law judge. Why isn't the test here? Exhaustion is linked to an available remedy. And there's no question is there that the EEO remedy is available. It's spelled out at length in 28 CFR 39.170. There's no question that it's available, isn't it? Is there? Well, Your Honor, there is a question on availability here. In fact, the EEO process was not available to Mr. Williams because prison officials had not informed him of its existence. It is undisputed that there is no reference to the EEO process in the BOP's grievance policy. And my colleagues on the other side have put in no evidence that Mr. Williams was otherwise informed of this additional procedure. So under... I'm not aware though that they were required to inform him. I mean, there are all sorts of statutes and regulations and everything that may govern prison behavior, but the prison authorities are not required to inform someone of all of those things. The question is, is it available? And there's no contention as I understand it that the prison officials misled the prisoner or tried to hide or mislead the prisoner about the availability of this procedure. Well, Your Honor, actually under the case law, because the PLRA of course by its own terms only requires exhaustion of available administrative remedies. And courts have to inform prisoners of administrative remedies. If they do not meet that affirmative obligation, remedies are not available. So for example, the Seventh Circuit in Ramirez considered a case where a prisoner spoke only Spanish and the prison grievance procedure was only available in English. And there the court held that remedies were not available because they had not been made known to the plaintiff in a language she could understand. Similarly, the Eleventh Circuit in Gobert, which I think is quite on point here, looked at a situation where the grievance requirements were spelled out in two separate policies and the plaintiff was only provided one of those policies. She complied with the requirements in that policy. And when the prison officials came back and said, but wait, there's a second policy and you did not comply with the policy, the court held that those remedies were unavailable because the prison officials had not made that second policy available to the plaintiff. They had not provided it to her to make it known. And that is exactly what we... In terms of making it known, prisons have considerable assistance. Couldn't the individual who'd gone to the prison librarian here, the prison librarian could have explained the procedures pretty thoroughly. It seems odd to me when you look at this EEO procedure, it's spelled out in great detail. And it seems odd that they would go to the trouble of setting forth a remedy in great detail about when the hearing has to be held and how long after the complaint is filed and everything. In fact, if that was unavailable, it's spelled out in great detail. And the prison officials did nothing to prevent or impede this individual from utilizing the procedure. And if that's the case, it was available. Your Honor, I'd like to make a couple of points in response. First, to be unavailable, there is no requirement that officials affirmatively impede or mislead or act untoward in any way. It is enough that they did not make the procedure known. And also, there is no affirmative obligation on prisoners to conduct exhaustive legal research. BOP did issue a program statement, did it not? Which it was known. I'm sorry, Your Honor, I think I missed the last piece of your question. The BOP issued a program statement in which it was known. Your Honor, the BOP grievance procedure itself contains no reference to the EEO process. And that is undisputed. Now, there is a second policy that was not before the district court that my colleagues on the other side presented for the first time on appeal. And under this court's usual proceedings should not be considered. But even if considering that second policy, it still does not make remedies available because there is no evidence in the and the 11th circuits. There's no evidence that he didn't have access. There's no evidence that he didn't have access. There's no evidence that he could not utilize the procedure. Your Honor, failure to exhaust is an affirmative defense that the defendants must plead and prove. And to meet their burden, they must demonstrate first that there was an available administrative remedy to the plaintiff and that the plaintiff failed to exhaust it. Here, they have put no evidence in the record that this procedure was available to Mr. Williams. So the prison officials here have not met their burden of this affirmative defense. But conversely, I'm not sure you put forward any evidence that it was not available. One of the things that this PLRA was intended to do was to reduce this kind of prison litigation, these sorts of prison litigation lawsuits. And in order to do that, administrate an exhaustion of administrative remedies was a critical component of what the to accomplish. And the scheme is not redundant in any way. The BOP administrative remedies were internal remedies that allow the BOP to conduct a review of its procedures and to correct its own mistake. The EEO remedy is a different remedy because it allows an external administrative agency to look at what's going on in the BOP. And the EEO has expertise in this area. It is the kind of agency that is accustomed to applying on a regular and consistent basis the Rehabilitation Act and applying it. And so you have an administrative scheme here that is not redundant, that is not repetitive. And it seems to fit with Congress's overall purpose of having agencies take a look at that before going into federal court. In fact, there are a slew of district court decisions that hold the EEOC. The EEO remedy is an available remedy, a long line of district court decisions. And I worry that we are dumping a great deal of work on federal district courts that could be resolved by the agency itself. And so the consequences of this are quite far-reaching and it makes sense as a coherent whole to have these two non-redundant procedures available for use to the inmate. Well, Your Honor, the PLRA, as you noted, was intended to allow prison officials to correct their own mistakes internally and to resolve claims efficiently. However, that is the BOP grievance process itself is for. The DOJ EEO process is not necessary and does not meet those goals. Rather than keeping the issue internally, it takes the issue out of the hands of prison officials. Does it matter that the BOP is part of the Department of Justice? And so an argument could be made that it, in fact, is internal. Your Honor, I don't think it matters that they're both part of the DOJ. It's still taking the issue out of the hands of the BOP prison officials and putting it in front of an administrative law judge. And further, the BOP grievance policy itself is considered sufficient to meet the goals of the PLRA for all other types of claims. We've heard no justification for why disability claims and disability claims alone require the second onerous procedure. Where does the statute say available internal remedies? You are adding a term to the statute. The statute talks in terms of available administrative remedies. The statute does not make a sharp distinction between internal remedies and external remedies. And even if it did, which it does not, the EEO remedy, as Judge Diaz noted, could be seen as internal because the EEO is, after all, a part of the Department of Justice. But the basic point here is that the statute doesn't say available internal remedies or draw a distinction between the internal and the external. So where do we get the authority to write this gloss on the legislation? Yes, Your Honor. Well, first, the Supreme Court in Woodford held that it is the prison's grievance policy requirements itself that govern proper exhaustion and not the PLRA. And in Jones, the court was unequivocal. It said, quote, compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust. And this interpretation is confirmed by the legislative history that demonstrates that when Congress used the term which is an undefined term, it meant internal prison grievance procedures. Where does the statute use the word internal administrative remedies? And if you want to look at the legislative history, what Congress was trying to do was to curb all of these lawsuits that are coming in and put some sort of break on them. And exhaustion is critical to what Congress wished to accomplish. If Congress had used the word available BOP remedies, that would help your case substantially. If Congress had used the word available internal remedies, that would help your case substantially. But those are simply not the terms that Congress used. Your Honor, I think that's why we need to look at Jones, which was unequivocal, that it is the prison grievance procedures itself that govern. And further, again, the BOP already has a grievance policy in place to meet the goals of the PLRA. And I see I'm at my time if I could just finish. Let me just, well, we can talk about Jones here for a minute. If you read that decision, it emphasizes the need to stem frivolous suits and to do so expeditionally, which often, and then Jones says, expedition is not always available in federal court. I'm not sure why you Jones helps you in that regard. And also we're dealing with remedies where a failure to exhaust, it doesn't throw you out, it simply dismisses without prejudice. You go by and do the administrative remedy and who knows, you may well win. I don't know. But you've got an agency whose job it is to apply the RA and you may well win. Your Honor, I'm over my time. No, no, I've taken up some of your time and I apologize for that. So I'd like to hear what you have to say. Yes, Your Honor. Thank you. So I do think Jones is directly applicable here because it was rejecting the imposition of a requirement onto the grievance procedure that was not found in the prison's grievance policy itself. And that is the same situation we have here. There is no mention of the EEO process in the BOP grievance procedure. And therefore under Jones, it is not required to be exhausted under the PLRA. And again, we need to read the PLRA consistently with the Rehabilitation Act. And that is another critical component of the statutory analysis here. The requiring exhaustion of this EEO process only of plaintiffs with disabilities raises serious conflicts with federal disability rights laws. And the PLRA cannot be read to conflict with those federal disability rights laws. Can I ask, before you sit down, one question. So at the beginning of your argument, you made a point that I want to follow up on. Let's assume for the moment that we don't agree with you and conclude that this was a proper internal remedy that your client had to exhaust. At the beginning of your argument, you appear to suggest that in terms of availability, the remedy was not available because prison officials did not explicitly direct him to the remedy. In fact, suggested that he had exhausted. So what in the record suggests that? Your Honor, the district court made a finding, and I believe it's undisputed, that the BOP group policy itself says nothing about this EEO procedure. And there is no evidence in the record that the EEO procedure was made known to Mr. Williams through any other means. And again, because failure to exhaust is an affirmative defense, it is defendant's obligation to prove that this remedy was available to Mr. Williams. Okay, just so I'm clear, but there's nothing in the record that says, oh, by the way, Mr. Williams, you're done as far as remedies are concerned once he exhausted with the BOP. There's nothing like that. Well, I think there is, in fact, because the BOP policy itself, laying out the procedure, says that the final step in the procedure is the quote, final administrative appeal. Any reasonable person reading that language would say, I have completed the full BOP procedure. I have completed my final administrative appeal. I have done all that is required under the PLRA. Okay, thank you. All right, counsel, let's, Ms. Petrosian, let's hear from you. Good morning, Your Honors, and may it please the court. My name is Holly Pertessi, and I represent former Bureau of Prisons Director Michael Carvajal. Mr. Carvajal asked this court to affirm the district court's decision in its entirety. Your Honors, the Prison Litigation Reform Act is as plain as it is mandatory. Before any prisoner may bring a lawsuit pursuant to any federal law, he must first exhaust all available administrative agreements. Here, in order to seek relief under the Rehabilitation Act, Mr. Williams was therefore required to exhaust not only the Bureau of Prisons Administrative Prevents Procedure, but also the publicly available and specialized Department of Justice EEO compliance procedures found in Part 39 of 28 of the Code of Federal Regulations. The district court here properly dismissed Mr. Williams' Rehabilitation Act claim without prejudice for failure to exhaust both available administrative remedy procedures before he filed suit. Your Honors, Mr. Carvajal does not dispute that Mr. Williams exhausted the BOP's Administrative Remedy Procedure generally to challenge the disciplinary sanctions he received after an incident report. But Mr. Williams did not utilize the Department of Justice Administrative Remedy Procedures to present the agency with notice of his alleged discrimination and retaliation claims. The purpose of administrative exhaustion is not to create unnecessary procedural hurdles on the path to federal court. The purpose is to create an additional step towards the finish line. And the finish line is not necessarily litigation. The finish line is resolving the claim. Here, Your Honors, again, the purpose of administrative exhaustion is to give an agency an opportunity to correct its own mistakes and also to promote efficiency. Both of those goals can be accomplished here through the Department of Justice procedures. Except that the agency here is not being asked to correct its own mistakes. It's suggesting or requiring the prisoner to go to another agency for correction of the BOP's mistakes. Yes, Your Honor. The prisoner would then be required to go to the Department of Justice, but the Department of Justice is a parent agency of which the BOP is a component part. The Department of Justice can require the Bureau of Prisons to take action. The compliance procedures found in Part 39 of Title 28 of the Code of Federal Regulations indicate that Bureau of Prisons staff can be required to participate in the investigation. And if any violations are found, a remedy can be imposed by the Department of Justice on the Bureau of Prisons so that the Bureau of Prisons can actually remedy the situation at hand in the prison. So let me ask you about the issue of availability. At the very end of the exchange with your colleague on the other side, I asked her, assuming that we hold against her client and find that this remedy is in fact a proper internal administrative remedy that needed to be exhausted, she pointed to the fact that the program statement all but suggests that as far as Mr. Williams was concerned, that he was done. That he didn't need to do anything else with respect to this exhaustion. What is your response to that? Mr. Honor, the Bureau of Prisons Administrative Remedy Procedure Program Statement itself does not reference the EEO procedures. That is undisputed. However, there are other program statements that are promulgated by the Bureau of Prisons that do reference this. I don't think there's any dispute about that. The question is whether that program statement that is most relevant to exhaustion misled Mr. Williams to believe that he was done and his next stop was federal court. Your Honor, the program statement needs to be read in light of the facts at issue here and the grievances that Mr. Williams specifically filed. The grievances Mr. Williams filed challenged the disciplinary sanctions he received. He indicated that he received a disciplinary report for failure to obey an order. And he was challenging that expunged. Nowhere in these remedies did he alert the BOP to the fact that he was alleging wrongful discrimination or retaliation. Had he done so, then it may have been incumbent upon the BOP to alert Mr. Williams that there was another process. But he did not. There was no evidence in the record, Your Honors, that the Bureau of Prisons was on notice that the specific actions Mr. Williams was challenging was improper, discriminatory, or retaliatory. When do you say that first came up? Can you repeat your question, Your Honor? When do you say that the issue of discrimination and disability first came up? When Mr. Williams filed his action in federal court, Your Honor. So is there a waiver argument? There could be, Your Honors, yes. Mr. Williams did not present the notice to the BOP that this was the issue he was claiming. And Your Honors, part of the purpose of administrative exhaustion is to give the agency that notice. Your Honors, more to the point. One of the questions I have is how far the agencies and everything must go in giving notice. And we have all kinds of litigation before us, which is governed by legal regulations, statutes, case law, treatises. And I don't think we've ever said that the government has an obligation to notify the inmate of this and that and the rest. And there's a reason for that. The more you require notice of this, notice of that, notice of this legal requirement, notice of that legal requirement, you're almost having the government act as a party to the case and a sort of lawyer for the inmate. In most of these prison environments, the inmates are pretty aware of what they need to do. It's quite a grapevine. And I just worry about what kind of path we're leading if we say you have to notify this and this and this. It might be of use to an inmate in a legal proceeding. I don't understand the limiting principle there. But my basic point is that this question is not a question of notice. It's a question of statutory interpretation. And maybe Congress got it wrong. It's clear what Congress was trying to do. But if Congress got it wrong, all Congress needs to do is add the word internal or add the word BOP or whatever. But Congress didn't do that. It wanted all available. And why did it want all available? An exhaustion of all available remedies because it was trying to stem what was a flood of prison conditions litigation in federal court. But there's an easy legislative fix to this if that's what Congress in its wisdom decides it wants to undertake. You see my point about the wording of the statute. Yes, Your Honor. Absolutely. The wording of the statute does not include any reference to internal remedies or even just specifically prison remedies. The only indication in the statute and the Supreme Court has found that the only limitation in the statute is whether administrative remedies are available. And I think, Your Honors, there is a distinction in availability as well. The first step is whether an administrative remedy procedure is generally available. And in this case, the EEO procedures are generally available in the Code of Federal Regulations. They're publicly available and they are specialized. The next question could be whether they are specifically available to an individual person. And that would be where the facts are utilized in that case. And I think, Your Honor. The other thing is the prisoner is going to be notified of this very quickly because what the federal court will do is dismiss quickly without prejudice. And the reason for the dismissal without prejudice is so that the inmate can exhaust the available remedy before the EEOC. And so you're going to get that notice. That's notice. You've got to go and exhaust this remedy before the EEOC and come into federal court. So one way or another, it's going to be the notice is going to be provided the inmate. And it's going to be there's going to be no prejudice here because these exhaustion dismissals are invariably without prejudice. And that is the notice. Go back. Go back. You're probably going to know this on the front end because there are many, many, many inmates who do exhaust that remedy. And even if it's not, even if you don't know something on the front end, the district court will have a quick dismissal without prejudice and you will go and exhaust the remedy and it won't hurt the inmate one single bit. Yes, your honor. Absolutely. In this case, the district court did dismiss this case without prejudice. And your honors, even if Mr. Williams time to file with the EEO had elapsed, the compliance procedures do allow for an extension in that time period for good cause shown. I'm glad you raised that because I think there is a concern here about the time frame having been run with respect to the ability of this particular inmate to file a complaint. Do you know if that's true? Your honors, he received his final response from the general counsel of the BOP on January 27th, 2020. And when he filed his complaint, that was May of 2020. But your honor is correct that the district court denial of his motion for reconsideration and granting of the motion to dismiss was not until March of 2022. Of course, if for any reason, he submitted a complaint to the department of justice today and the department of justice rejected that remedy as untimely and he was unable at that point to Mr. Williams or the remedy procedure was unavailable. But it doesn't mean that it was unavailable at the time he filed the suit. And it doesn't mean that it's generally unavailable. Well, it may be that the timeliness is told while the case is in federal court before it's dismissed without prejudice that might toll any kind of time limitations. But one thing that concerns me is the EEO is the federal agency with the most expertise in this kind of prison litigation. It looks at these cases nationwide. And it has built up through the years, a considerable experience and expertise with these cases. And it just seems unusual to me that we would cut out the agency whose experience can best be brought to bear and say that Congress and a statute meant to curb this kind of legislation actually meant to cut out and render nugatory the administrative agency and the administrative remedy, which could have brought the greatest background and experience to the claim. It doesn't make sense to me in light of the wording of the statute to say that this is not remedy is the very thing that would be most constructively and in full brought to bear on this gentleman's claim. And who knows, many times people receive relief, many times they are this conciliation, many times there's a settlement. And it would be best to have this done without going into federal court, but there's an easy legislative fix here. And the reason the legislative has not been applied was, please proceed. I apologize, your honor, you cut out a bit at the end. So if I missed any part of a question there, please let me know. But your honor, I think you bring up a great point in that the Rehabilitation Act claims that the BOP itself may lack. It doesn't have this specialized knowledge that the DOJ has, that the EEO has to resolve these complaints. And it allows for informal resolution. It allows for a factual record to be developed. That factual record can be appealed to the complaint adjudication officer. And if either party warrant were to request it, an administrative law judge can also hold a hearing. And if ultimately this case were to make it to federal court, the federal district court would have an administrative record to rely on that may narrow the facts, may narrow the issues, or otherwise present a complete record for review. The other thing is, this is not an agency which is unsympathetic to civil rights claims. The EEO validates the position of petitioners and plaintiffs in many cases, and rightly so. And the case is resolved to plaintiffs' benefit and satisfaction without going into trying ab initio, essentially, the case in federal district court. This is not an unsympathetic forum. We're not banishing somebody to something where there is no hope of redress. Absolutely, Your Honor. And Judge Diaz, did you have a question? So, your colleague on the other side talked about the, and I know you, I think you sort of answered the question with your, the most recent comment, but she makes an argument that, in fact, this is discriminatory because one set of prisoners have to go through an additional layer of review. The counter is that this actually might be salutary because it provides yet another opportunity to remedy whatever the complaint is. But I guess, at some point, you know, there might be so many layers of administrative review that one could argue that the prison is, in fact, attempting to exhaust the prisoner by preventing him from getting to federal court. I imagine you don't think that's the case here, but what about the concern about disparate treatment involving two different sets of inmates? Of course, Your Honor. The VOP's Administrative Remedy Procedure does apply to all inmates. The EEO procedure only applies to inmates alleging discrimination or retaliation on the basis of a disability. So, here, there is a prisoner who falls into two categories. He is not only an incarcerated individual, but he is a disabled individual. So, if he wishes to vindicate only the rights of a general prisoner, then he would have to exhaust the VOP's Administrative Remedy Procedure. And, in fact, he had claims that only needed to be exhausted at the VOP level. He brought claims under Bivens, and he brought claims under the, and he brought injunctive relief claims. The claims he specifically brought under the Rehabilitation Act, then he had to utilize the EEO procedures because those procedures were specifically implemented to enforce the rights under the EEO. Correct, Your Honor. Not with any specificity. Your Honors, does the Court have any additional questions? No, I don't. If my colleagues have questions, I'd be delighted to have them ask them. If they don't, we would thank you for your argument. Thank you, Your Honors. Mr. Carbajal respectfully asks that this Court affirm the decision of the District Court in its entirety. Ms. Wetter, can you have some time reserved for rebuttal? And we'd be pleased to hear from you. Yes, thank you, Your Honor. I'd like to start just by correcting a factual, correcting the factual record here. Mr. Williams did, in fact, raise his disability discrimination concerns in his grievances to the VOP. In fact, he even cited to the Americans with Disabilities Act. And that grievance and citation can be found on Joint Appendix page 79. And I also wanted to address the discussion around the expertise of the EEO process. And I'll note that a ruling that the PLRA does not require exhaustion of the EEO process does not preclude plaintiffs from taking advantage of it. Now, of course, the Rehabilitation Act itself does not contain an exhaustion requirement. Plaintiffs bringing claims under the Rehabilitation Act are not required to exhaust the EEO process. It is voluntary by its own terms. In fact, the language of the regulation uses the word may. So, the only exhaustion requirement at issue here is that of the PLRA. And once a prisoner has met the requirements of the PLRA by completing the VOP grievance procedure, they then may choose to either pursue their claims through the EEO or they may choose to pursue their claims in federal court. And I'll also note that these are, of course, policy considerations rather than ones of statutory interpretation. And when we go back to the language of the statute and look at what other courts of appeals have considered when looking at the language here, both the Ninth and the Third Circuits have held that the PLRA's exhaustion language refers to internal prison grievance procedures. The Ninth Circuit in Rumbles looked at this language and determined that only internal prison grievance procedures must be exhausted. It rejected the argument that prisoners must also pursue an external remedy through state tort procedures. How does this, some kind of discrimination can also be seen as an opportunity that an administrative remedy is made available? I am nervous about the idea that anytime an administrative remedy is provided to a particular class of plaintiffs, that that is a discriminatory action. I don't think the Supreme Court would buy off on anything like that. Um, it's just as easy to say that providing an available remedy to one class of plaintiffs and not to another is making an opportunity available. I don't necessarily disagree with your policy arguments. It may be that they should be able to bypass the EEO with its background and expertise, but all I want is a statute that puts in either any of the things we have been discussing today, the word internal, the word BOP, just something. All it requires is an adjective to get to your view. There's the bridge, an adjective that is not there. Do you see my point? Um, I do. Once again, I'm over time. Yeah, I've taken up a lot of your time and I want you to have some extra time until you feel like you've made your case. Okay. Thank you, Your Honor. And I share in your frustration, as other courts have, that the PLRA, as the Second Circuit said, is not a paragon of clarity. Congress could have done more to make this more explicit, but that's where we need to look at how the Supreme Court has interpreted and applied this provision. And of course, the Supreme Court's Woodford v. Jones, where it held that it is the prison's internal grievance requirements that govern, and that compliance with the prison's grievance procedure is all that is required under the PLRA, those determinations are binding on us here. And because the EEO... Okay, but counsel, sometimes prisons make mistakes. You and I can find some agreement and common ground there. Prisons and prison bureaucracies are not infallible. And sometimes, goodness knows, they make mistakes. And that's one of the reasons the EEO is there, is to correct the mistakes that they make. And it seems to me quite inventive, in one sense, for Congress to for mistakes, and not just leave the BOP to its own devices. But I am concerned about there's just a whole lot of ways in which the EEO can provide district courts a great deal of this case, the question before us. I do not think we keep relying on the Jones decision, but I do not think that this question was in Jones. And a great, great many courts have held that exhaustion is required, a great many. But go ahead. Yes, Your Honor. And you were cutting out a little bit there, so I apologize if I missed something. But to the beginning of what you were getting at there, the BOP grievance policy is what provides prison officials the opportunity to correct their own mistakes. And that procedure is sufficient for all other types of claims. There's simply no reason why disability claims and disability claims alone must be sent through this securant, onerous process that can take more than a year to complete. And further, these other district court cases that Judge Wilkinson referenced, frankly, got it wrong. They all seem to assume that because the EEO process exists, and because the BOP says so, it must therefore be required. But that is not what the law holds. Jones, I believe, is directly applicable here. It said that only those requirements set out in a prison's grievance policy must be exhausted under the PLRA. What if the prison in this case had said, with respect to discrimination claims, we're not going to have any internal administrative remedy in the BOP, but you need to go directly to the EEO. Would that be okay? Your Honor, I still think that would be problematic when trying to construe the PLRA consistently with federal disability rights laws. If the BOP wanted to bring in additional disability rights expertise, they could certainly do so as part of the standard BOP grievance procedure. They could have people with disability rights expertise review those grievances. But to be consistent with federal disability rights laws, prisoners with disabilities must be given equal access to the grievance procedure. They must not be required to engage in that service in a different or unequal way. That is what... Counsel, that's for Congress to decide. That's not for us to decide. You're making a policy argument. This discussion has been constructive in this sense. Your position is not one, and I think that Judge Diaz was indicating this, your position is not one that he didn't get notice of the EEO procedure. Your position is that even if he had gotten notice, the requirement would still have been extraneous and burdensome. Whether you get notice of it, or not, your position is not dependent on fairness or notice. Because you say this is impermissible, that it's discriminatory, which has all... That position has all kinds of problems. But your position goes far beyond notice. And what you're saying is that this is intrinsically impermissible for Congress to have done. Your Honor, I'll note that Congress did not do this. They did not require the EEO process. Congress required that prisoners exhaust such administrative remedies as are available. And all we need to do here is interpret that language consistently with federal disability rights laws. Congress did not mandate through the EEO procedure that prisoners exhaust that set of procedures. There's nothing in the language of the EEO procedure itself that makes it mandatory on prisoners. So I didn't understand what you're saying there, but I did just want to note that. No, no, that's fine. But this is, it's really a simple case at heart. Congress mandated the exhaustion of available administrative remedies. This remedy is available. This remedy was not exhausted. It is a very simple syllogism, and it has at its heart a fidelity to the legislative text and say, okay, Congress, this may be a problem. Please fix it. But at any rate, we need to conclude this. And I give you the last word. Tell me why everything I said to you is woefully incorrect. Your Honor, as the last word, I will just note to what you just said about available, there is no evidence in the record here that this remedy was available to Mr. Williams. My colleagues on the other side have pointed to no evidence that made this remedy available. And the PLRA simply does not require it when interpreted consistently with federal disability rights laws and when following the binding precedent of Jones. So, Your Honor, we ask that this court reverse the district court's grant of summary judgment and remand for further proceedings on the merits. All right. Well, I want to thank you for a very constructive and interesting argument. Both you and government counsel have done a fine job, and I just want you to know how appreciative I am. Thank you both. Thank you, Your Honor. Thank you. We'll move into our next case.
judges: J. Harvie Wilkinson III, Albert Diaz, Max O. Cogburn Jr.